Thank you, Your Honor. May it please the Court, Jonathan Schneller for Cory Misraje. I'd like to start with the due process argument under Allegation 3 and then turn to Allegation 4 and whether Mr. Misraje used his friend's cell phone. On Allegation 3, I want to emphasize a point that I hope hasn't been lost in the briefing, which is that the test that applies here is a simple reasonableness test of the sort that courts apply every day. It asks first whether the delay in bringing this allegation was reasonable, and second, whether Mr. Misraje was prejudiced by any unreasonable delay. And most of the briefing under one guise or another focuses on the issue of reasonableness here. Prejudice is not extensively or meaningfully contested, I don't believe. And on the question of reasonableness, it's our position that under the Highland... Excuse me. What you said about reasonableness is that, was there, about prejudice, is there any specific prejudice that you've alleged? Yes, we do allege prejudice, which is, our prejudice argument is straightforward. It's that if it weren't for this delay, if it weren't for the piecemeal charges in which, the piecemeal fashion in which these charges proceeded, Mr. Misraje would never have had an obligation to register as a sex offender, or to re-register, rather. The reason he had to re-register as a sex offender is because while the first round of charges against him was pending, he was in prison for more than 30 days. And those charges weren't ultimately proven, but still when he got out, he had to re-register as a sex offender under California law. But was he then arrested again and imprisoned on the second set of charges, before they were adjudicated? Before they were adjudicated, yes, but after his confession. And so our point is that he would have never been in that room to confess if it weren't for this piecemeal fashion in which these charges were brought. And more than that, the specific way the government elicited a confession from him was by telling him, you've already been charged once, that's a done deal. How can you confess to something that's already a done deal? So the piecemeal charges here, in addition to making sure he was in that room, also allowed the government to deceptively elicit that confession from him by telling him essentially that the charges against him were over. If it weren't for the first round of charges, the government would have never had him in that room, and it would have never been able to assure him that he could safely confess because he had already been charged once. And so that's our prejudice argument. It's a combination of enabling the interrogation and enabling the specific deceptive tactic that the government used to elicit his confession here. So is there any evidence in this record that the probation office had actual knowledge of the way that the defendant got the child pornography on his DS at the time it initiated the original charges? Your Honor, they didn't have actual knowledge of the full means by which he committed the crime. But doesn't Hamilton require actual knowledge, and Tyler, don't they require actual knowledge? In those cases, the probation office had actual knowledge. That's true that in those cases, the probation office had actual knowledge, but they don't say that that's a prerequisite for due process. So do you have any authority for the should-have-known standard that you've been pressing here? Your Honor, no. But as the district court recognized below, these types of cases are incredibly fact-specific, and they vary dramatically, and there are really no on-point cases in either direction. The government doesn't have a case saying that, you know, inquiry notice or strong circumstantial evidence isn't enough to give rise to a due process claim. All there are are cases with different fact patterns, and there isn't one exactly on-point here. But isn't it true that the probation office should have known a lot of things in a lot of cases? It's true, Your Honor, and it's not our position that that's at all dispositive or even close to dispositive. We think it's just one factor that plays into the reasonableness analysis. So if the probation office has, as here, strong circumstantial evidence of a violation and it fails to investigate it, that's not a due process violation. But it does play into the reasonableness analysis. And here, what pushes things over the line is what happened after that. Right. But you have to get to what happened after it by establishing what happened before. That's right, Your Honor. And here, what happened before is that they had very strong circumstantial evidence that they failed to follow up on. And again, they're not obligated to follow up on all circumstantial evidence they have. And it might be one thing to say, we failed to investigate and then a new witness came forward later, or we failed to investigate and then some new evidence came across our desk by innocent means. It's another thing to say, we failed to investigate and then we took an abortive first charge on what we thought were easier to prove allegations. And then we imprisoned you for six months while that was pending. And then when you got out, we used the first charge, or the consequences of the first charge, to orchestrate a very high-pressure backroom interrogation. That's very different. So I don't think often, or in most cases, a failure to investigate will have serious due process consequences. But the test here is a reasonableness test. And failure to investigate is one factor that plays into reasonableness. As we know in our brief, any other approach would effectively reward the probation office for its lack of diligence here. And it would... Aren't you putting the burden to comply with the terms and conditions of supervised release has to rest on the defendant, correct? That's correct. And you're putting the focus on whether or not the probation office or the district attorney or whoever, or the United States attorney, appropriately investigated the allegations. Isn't that sort of standing a compliance obligation on its head? You're imposing the obligation not on the defendant to comply with the terms of supervised release, but on the probation office to investigate properly the allegations of a violation. I don't think those two things are inconsistent. That supervised release does have an obligation to comply with the terms of supervised release. It doesn't mean that due process allows the probation office to completely ignore allegations of which it has strong circumstantial evidence and then proceed in a piecemeal fashion. And then later, when its initial charges fail, say, okay, now we're going to come back at you over the same set of events and reopen our investigation. I don't see how that's inconsistent. Is there a case in which that happened, i.e., they basically had two different charges on the same incident? I'm not aware of any, Your Honor. I'm coming out either way. I'd like to quickly, unless there are further questions on Allegation 3, I'd like to quickly turn to the fourth allegation and the question of use. The terms of this term of supervised release at issue here forbade Mr. Mizrahi to, quote, possess and use any computer-related device. Now, I assume you would agree that if they had any evidence that he had told her that he wanted to look at something about public storage and that she had just pushed the buttons, that that would be using it, even if he wasn't doing the pushing. Yes, I would. We say that in our reply brief, is that that would be using the phone indirectly through her. It would still be using the phone. But there's no evidence of that here. And in fact, the evidence is that the storage facility was for her benefit. It was to store her belongings, and she had just showed him the screen. Why does what's on the screen matter? Because I think, depending on what's on the screen, it can support an inference that he asked her to pull it up. So if she had shown him... Well, if he had asked her to pull it up, that would be clearly a violation. That's right. But why is it not a violation if he is holding the phone and looking at it, even if he didn't ask her to pull up that screen? Because the condition here requires him to use the phone. And we give examples in our brief. The Supreme Court defines use of active employment, and we point out that if... Right, but he's looking at a screen. That's right. But if Judge Berzon showed you a vacation picture on her phone, and you just looked at the vacation picture and gave it back to her, no one, I mean, most English speakers would not say you used the phone in that circumstances. You just looked at it. Well, it's not just a phone. I mean, to say that I've used the phone, when I was growing up, if you said, can I use your phone, you had to pick up a handset and dial something. But today, this is a small computer. It's not just a phone. And so was he possessing and using a small handheld computer? Very difficult to say that he wasn't if he's looking at pictures of something on that phone. But again, I would just bring it back to the example of no one would say you had used Judge Berzon's handheld computer either by looking at that. That's just not how the word would be used in everyday spoken English. Does it matter whether he's holding it or not holding it? I'm sorry? Does it matter whether he's holding it or not holding it? If he's looking over her shoulder, then I would agree that it seems pretty odd to say he's using it. If he has it in his hand, is that different? I don't think it is, Your Honor. I think the government had the opportunity to present evidence that he had manipulated it in some way. But the fact that he's holding it is a basic interaction. If he's looking over her shoulder and they're looking at child pornography, very difficult to say that he's not using the phone. That I agree with, Your Honor. Your argument would be that he's not possessing it. No, my argument is that he's not using, no, so there it would be difficult to say he's not using the phone because I think there'd be a strong inference that he had asked her to pull up. If she's holding it, well, whether, even if she, even if there were a whole boatload of people who said he never asked her to pull it up, she said, hey, I got something I want to show you. But if he's looking at it, then he's using it. But if he's not holding it, your, I think your best argument is he's not possessing it. Here he's both possessing it, he's got it in his hand, and he is looking at the screen. Respectfully, Your Honor, I think most English speakers would not say he's using the phone by looking at it. Well, would they say he was possessing it? Possessing usually has some kind of dominion notion. Well, but here he held the phone in his hands. He held it, but he couldn't have walked off with it. That's true, Your Honor. The supervised release condition does not depend on the content, correct? It does not, but the content could support an inference that he had played some active role in pulling it up. What's the condition that suggests that he's got to play some active role in calling it up? It's the word use, which requires active employment under a Supreme Court precedent and as a matter of convention in everyday spoken English. That's what required that he had some role in manipulating the phone or actively using it rather than just looking at it. Your time is up. We'll give you a minute, Your Honor. Thank you. May it please the Court, Nancy Spiegel for Plaintiff at the United States of America. I'd like to address the reasonableness argument first, the unreasonable delay argument. And I think it's important to remember Not exactly an unreasonable delay argument as I understand it. It is a compendium of circumstances of which the time is kind of the least of it. It's that it's essentially two sets of charges about the same incident, which is at least peculiar and not to be encouraged, I would think. Go ahead. And also leading to the interrogation in which there was at least some misrepresentations that went on, there's this very funny disagreement between you as to whether the door was locked or not, which I don't understand. The record either says or doesn't say that the door was locked, but apparently you disagree about that. Well, our position is the record is unclear on that. In our brief, we argued that the inference from the facts would point to the fact that the door was unlocked. I think the only thing in the record that either of us can point to is the transcript of the recording of the interview with Detective McPartland. And the only reference to the door and being locked is when they first approached the door and she's fiddling with it and having trouble unlocking it. And then at the end of that interview where she says, you're free to go, I need to lock up, we infer from that that the door wasn't locked during the interview. But the fact of the matter is there is nothing conclusive on the record. And the defense had the opportunity to cross-examine Detective McPartland at the suppression hearing and failed to do so. I must say that I thought the notion that he was free to leave was extremely questionable. He would think he was free to leave. I mean, he was a probationer or a supervised release person. He at least had an obligation to talk to his probation officer. He may well have thought he had an obligation to talk to the police person. He was there to register. It was part of his registration effort. So the notion that he thought he could just walk out when he had at least two sets of obligations that he was fulfilling seems extremely unlikely. Does that matter? I don't think it does. First of all, we're not talking about a self-incrimination analysis. We're not talking about... I understand. That's why I'm asking you, does it matter? So in our view, the whole issue of the interview is really a non-issue because it didn't lead to criminal charges. It wasn't under that Fifth Amendment rubric. And even if it did, we think he was free to leave. His father was waiting outside in the car. And as the district... How long? About 15 or 20 minutes. Okay. And as the district court found, this is a sophisticated criminal here, young, but sophisticated. He could easily have said to Detective McPartland, you know, I'm here to register. I don't really want to answer questions about what happened in December. He was free to do that, and he didn't do that. So if I can address the court's first sort of concern about the two incidents, we would argue... One incident, two charges. Yes. Sorry. One incident, two sets of charges. The reason why... First of all, our contention is the probation officer did investigate the first incident after he was informed by the psychiatrist of what the defendant had shown the young child in the waiting room. He talked to the psychiatrist and got the psychiatrist's report. Then he went and he did interview the defendant and asked the defendant. The defendant lied to him and, you know, denied any knowledge of these pictures on his DS. And furthermore, he told the probation officer that he could find the DS at the defendant's home. The probation officer went to the home. It wasn't there. He asked the defendant to bring the device to him the next day. And when he looked at the device, there was no child pornography on it. It did go through a forensic examination at that time. And of course, as we now know, there was no child pornography on it because the defendant was the one who destroyed it. So if there is delay in bringing that later charge, I would contend that it was in part, at least, the defendant's own evasive efforts in lying to probation officer Smodson and in destroying the evidence. And so at the time, knowing all that and probably surmising that the defendant was lying, probation officer brought the charge that could be supported by the evidence or which he believed could be supported by the evidence. And to argue that it was... So he was convicted, I guess isn't the word, but he was found to have violated, there were four charges the judge dismissed two. Does the fourth one, the use one, matter to the ultimate, to the sentence? It's, you know, it's hard to know. I think if you look at the record of the sentencing carefully, the judge was much more concerned about the use of the computer in the psychiatrist's office than the other incident. But both incidents are really the same violation of supervised release, and I think taken together because they're both possessing and using a computer-related device without informing the probation officer. That's the condition that was violated. And so to, you know, violating twice rather than once, there is a little additional aggravation, I think, that adds, you know, possibly to the sentence. So I think both of them do matter in that sense. Do you want to address the use issue? Yes. I think that the ordinary, natural meaning of the word use is exactly what the defendant did here. He was looking at a screen on a phone or a little mini-computer, as the court said. Well, if you pick up a newspaper... And he's absorbing information. Let me ask you something. If you pick up a newspaper, are you using the newspaper? If you're just holding it like this, you're not using it. If you're absorbing the content, yes, I believe you are using it. No one would really ever say that. We don't say that. We say, read the newspaper. Right. Right? He was reading the screen, but was he using the computer or using the cell phone? He was absorbing the content of what was on the cell phone, and that was a photograph, and he was absorbing it. That's using it. But that's... I mean, that was fortuitous that it was on a screen and could have been a piece of paper. Right. It could have been anything. Right. Right. So, in terms of what the point of this whole restriction was, it wasn't to absorb some information. It was to use a device. Right. So, why is he... Why was he using the device as opposed to just reading something? I think reading something is using the device. I think the whole idea of this restriction is because of his, you know, past criminal history. But if he had no control over the access points of this thing, if he couldn't and didn't, in fact, search for anything or direct anybody else to search for anything, I mean, that's the concern. Right? It's not that he's going to read something that he could have read on a billboard or on a newspaper. It just seems to have nothing to do with the concerns that underlay this restriction. No. No, because... I disagree, because the concern that underlays the restriction... And this is supervisory release. It's all about complying with a probation officer's orders. Oh, the problems are just... So, it has nothing to do with any substance. It's just if he would tell you to do it, you have to do it. Is that what you're saying? Because... Well, the point is he's... The point is the conduct that led to this violation was using a computer-related device without letting the probation officer know that he was using it. And granted, this was a short period of time he was using it, but it's still, you know, within the spirit and the letter of the supervisory release condition that he was using that phone. He was holding onto it. He was absorbing the information. And I... Had no ability to do... to use it in the sense that women usually say use it, i.e., access anything that wasn't already on it. I wouldn't say that he couldn't have. He didn't. He didn't, but he could have pushed the button. There's no evidence that he had any authority with regard to his friend's permission to do it either. That's true. That's true. So, he... Therefore, all he had permission to do, as far as the record shows, is look at something. But looking at something is using it. I mean, he's using the device in order to absorb the information that's on the screen. He's not just holding onto it. You know, the friend says, would you hold my phone while I use the restroom? He's doing more than just holding it. He's actively employing it by looking at some content, absorbing the content, and I just think in normal usage, that is using the phone. I wouldn't say that when you look and read something, you're using it. You wouldn't. Well, we respectfully disagree. If I'm looking at a movie, if I'm sitting in a movie theater, am I using the movie? Yes, in the sense that you're absorbing the content. But no one would ever say that. Well, no. Of course not. Right. Okay, thank you, Your Honor. Yes, sir. One minute. Thank you, Your Honor. Just two quick points. The first is that the government emphasized that Mr. Mizrahi denied responsibility and tried to evade responsibility here. I just want to respond to that. That's true, and it is a factor that's relevant to the reasonableness question here, but it's not dispositive. As the district court implicitly recognizes. Well, my problem is this is totally amorphous. I mean, there just seems to be no standard out there. I mean, it's because the self-incrimination doesn't apply and double jeopardy doesn't apply, and we're just, what, doing some sort of judge zeitgeist as to what's unreasonable and what's reasonable? Your Honor, that's what reasonableness tests often call on the court to do. It's just sort of at the amorphous end. I mean, it doesn't seem to have any content or standards or anything. What are we looking at? You're looking at principles of fundamental fairness and reasonableness, and I wish I could offer you on-point case law. What's our standard of review? Your standard of review is de novo on the due process claim. We get to decide de novo whether there's a violation of due process? Yes, Your Honor. We cite an authority for that. I forget which one in our opening brief. And so I wish I could offer you a precisely on-point precedent here, but I can't. I, for example, find the interrogation troubling because she did play on the fact... I mean, she told him that he had nothing to lose, and that wasn't true. As it turned out, he did have something to lose. But A, we sort of allow things like that in confessions, although less so sometimes. But if we're not applying a coercion... Are we applying a coercion standard? No, Your Honor. It's a reasonable standard. Well, why aren't we applying a coercion standard? Is it okay to coerce a confession? I mean, I assume if she beat him, it wouldn't be okay. That would raise due process questions. The reason we didn't attack this as a coercion question is because the Fifth Amendment right against self-incrimination... As to the admission, as to whether you could admit it. Right, and it has been held not to apply in introducing the evidence in supervised release proceedings. But to the extent that's troubling, and I agree that it is, the rubric that it falls under is the reasonableness of the sequence of events here. If we were writing an opinion, what would we say was unreasonable? It's the piecemeal, dilatory charging tactics in this case, which encompassed in a range of abusive police practices, specifically the exploitation of the sex offender registration to elicit a confession on false pretenses. By doing so, do we encourage defendants to basically hide information from the probation office? I don't think that's the net effect here. What happened here? Your Honor, the reality is that defendants will often, in fact in most cases, deny responsibility for their actions. The question this case presents is how far the government can go when they do. He did more than deny, he hid it. That's true, Your Honor, and that happens often. And the question is, is this an acceptable response, this sort of piecemeal charging, to say, you've denied responsibility, so we're going to charge you for one thing, and then when that fizzles out, we're going to come back at you in the same thing. That's because they got the information. Suppose they had not, the confession hadn't happened or the interrogation hadn't happened, and instead they found out otherwise that he had used this Walmart computer. Just by, you know, Walmart came and said some guy was here taking pictures of our computer. Would that be a problem, and then they charged him again? I think it would be a very different case, and I'd say it probably would not be a due process violation. It's the whole sequence of events here that we think means this delay was unreasonable. Okay, Your Honor. Thank you very much. Thank both of you for your useful argument. The case of United States v. Mirage is submitted. We'll go to Johnson v. Montgomery.
judges: Berzon, Bybee, Woodcock